**Musibau HASSAN, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 90–70173.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 4, 1991 *.

Decided March 1, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Robert Pauw, Washington Immigration Project, Seattle, Wash., for petitioner.

Francesco Isgro, Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before WIGGINS, BRUNETTI, and NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

Petitioner Musibau Hassan ("Hassan") appeals the decision of the Board of Immigration Appeals (the "Board"), affirming the decision of the Immigration Judge ("IJ") which denied Hassan's application for adjustment of status and Hassan's request for a waiver of grounds of excludability.

I.

Hassan is a twenty-seven year old citizen of Nigeria who entered the United States as a student in 1983. In 1985, Hassan married a United States citizen. In January 1986, following a visit to Nigeria, Hassan was apparently paroled back into the United States for the purpose of applying for adjustment of status. However, Hassan threw away the passport which he used to enter the United States on that occasion.

In January 1986, Hassan was arrested and eventually convicted in Kentucky of one count of theft by deception. Following this conviction, Hassan was placed in exclusion proceedings, and was ultimately ordered excluded and deported from the United States on May 16, 1986.

Hassan reentered the United States on or about August 12, 1988, using a passport bearing a false name. On or about August 29, 1988, Hassan applied for a United States passport using a Kentucky birth certificate bearing a false name. Hassan was arrested for and later pleaded guilty to a violation of 18 U.S.C. § 1542, making a false statement in a passport application, on April 28, 1989.

Hassan was also convicted of second degree theft and unlawful issuance of a check on December 8, 1988, in Spokane, Washington.

On July 20, 1989, the Immigration and Naturalization Service ("INS") ordered Hassan to show cause why he should not be deported on the grounds that when he entered the United States he was excludable. The INS also alleged that Hassan was deportable as a result of being convicted of two crimes involving moral turpitude.

In an oral decision on August 25, 1989, the IJ found Hassan deportable. The IJ denied Hassan's application for waiver of inadmissibility, in light of Hassan's "extensive criminal history," and held that even if Hassan were eligible for adjustment of status based on his marriage to a United States citizen, the waiver of exclusion would be denied.

Hassan filed an appeal with the Board on September 11, 1989. The Board dismissed

the appeal on February 7, 1990, finding that the IJ had been correct in denying Hassan's applications for adjustment of status and waiver of inadmissibility. The Board declined to remand the case on grounds that the IJ's comments about Nigerians proved that the IJ was biased against Hassan.

Hassan raises three issues in his appeal of the Board's decision: (1) whether the Board abused its discretion in determining that Hassan's family would not suffer any extreme hardship as a result of Hassan's deportation; (2) whether the Board erred in failing to consider Hassan's eligibility for a conditional waiver; and (3) whether Hassan's due process right to a fair hearing was violated by the IJ's bias against Nigerians. We consider each argument in turn.

## II.

Hassan concedes that he is an excludable alien under section 212 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182), but claims that under section 212(h) (8 U.S.C. § 1182(h)), he was eligible for a waiver of inadmissibility because his family would suffer "extreme hardship" as a result of his exclusion.

An excludable alien is entitled to relief under § 212(h) if:

(1) he is the spouse, parent or child of a U.S. citizen or lawful permanent resident; (2) deportation would result in extreme hardship to the U.S. citizen or lawful permanent resident spouse, parent or child; (3) the alien's admission would not be contrary to the national welfare, safety or security of the United States; and (4) the Attorney General exercises his discretion in the alien's favor.

*Moran–Enriquez v. INS*, 884 F.2d 420, 422 (9th Cir.1989). Hassan clearly meets the threshold requirement of section 212(h), as both the spouse and the parent of American citizens. However, relief under 212(h) also requires that Hassan make a sufficient showing that his American family would suffer an extreme hardship as a result of his deportation, *and* that his continued presence in the United States would not be contrary to the safety or welfare of this country.

This circuit has not determined what constitutes "extreme hardship" for purposes of section 212(h). Both of the parties to this appeal urge this court to use the same interpretation of "extreme hardship" for section 212(h) relief as we have used to grant relief under section 244(a)(1) of the INA.[1] As the extreme hardship provision of section 244(a)(1) is the same as to an alien's spouse, parent or child as in section 212(h), we agree that the section 244(a)(1) cases are helpful in determining what constitutes "extreme hardship" for purposes of section 212(h). We will consider them in determining whether Hassan has made the requisite showing of extreme hardship under section 212(h). This court reviews Board determinations of "extreme hardship" under section 244 for an abuse of discretion. *See Cerrillo–Perez v. INS*, 809 F.2d 1419, 1421 (9th Cir.1987). Although the Board has "authority to construe 'extreme hardship' narrowly," *INS v. Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981), this court has required the Board to "state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Mattis v. INS*, 774 F.2d 965, 968 (9th Cir.1985); *see also Vargas v. INS*, 831 F.2d 906, 908 (9th Cir.1987) (Board

---

**1.** 8 U.S.C. § 1254(a)(1) ("Suspension of Deportation") provides as follows:

As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of the subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

decision only set aside if it fails to support conclusions with "reasoned explanation based on legitimate concerns"). The Board must consider all relevant factors because the determination of hardship depends on the specific circumstances of the case. *Sullivan v. INS*, 772 F.2d 609, 610 (9th Cir.1985).

Extreme hardship will not be found absent a showing of significant actual or potential injury. *See Matter of Ngai*, Interim Decision No. 2989 at 3 (BIA 1984). The common results of deportation or exclusion are insufficient to prove extreme hardship. *See Ramirez–Durazo v. INS*, 794 F.2d 491, 499 (9th Cir.1986) (under § 244, "unique extenuating circumstances necessary to demonstrate 'extreme hardship' "); *Matter of Shaughnessy*, 12 I & N Dec. 810, 813 (BIA 1968) (separation from family and financial difficulties do not constitute extreme hardship unless combined with more extreme impact).

▮▮▮ The Board ruled as follows in Hassan's case:

> Having carefully considered each of the hardship factors the respondent has raised, both individually and in the aggregate, we conclude that these elements do not in this case constitute extreme hardship to a qualifying family member for purposes of relief under section 212(h) of the Act.

The Board specifically addressed the claims of emotional hardship to Hassan's spouse and children, and the financial strain deportation would cause for the family. The Board rejected the claims of financial strain as "unclear," as Hassan was never authorized to work while in the United States, Mrs. Hassan had supported the family in the past and was currently capable of working, and a primary source of financial support was Hassan's father in Nigeria. The Board noted that "the financial difficulties shown are not a result of deportation, and it is not clear how the respondent's deportation would render them more severe."[2]

The Board also noted that while the claim of emotional hardship was "relevant and sympathetic ... it is not conclusive of extreme hardship, and is not of such a nature which is unusual or beyond that which would normally be expected from the respondent's bar to admission." *See Patel v. INS*, 638 F.2d 1199, 1206 (9th Cir.1980) (severance of ties does not constitute extreme hardship).

The Board did not abuse its discretion, as it fully considered the relevant facts; that it did not consider them overwhelming does not affect our decision. "The application of the 'extreme hardship' requirement is committed to the [Board] and will not be overturned simply because we might prefer another interpretation of the statute." *Alvarez–Madrigal v. INS*, 808 F.2d 705, 707 (9th Cir.1987). Because Hassan failed to show that his family would suffer an extreme hardship under section 212(h) as the result of the denial of the waiver of inadmissibility, we affirm the Board's denial of said waiver.

### III.

▮▮▮ Hassan argues that the IJ and the Board erred in failing to consider his eligibility for a conditional waiver of excludability that would be revoked if he committed any crimes in the future.

Conditional waivers are not authorized by the language of section 212. "[In] view of the absence of statutory and regulatory sanctions for 'conditional' section 212(c) waivers of inadmissibility, we cannot find any authority for the continued use of such grants of relief." *Matter of Przygocki*, 17 I & N Dec. 361, 363–64 (1980). Because a conditional waiver is not authorized, Hassan's argument that the Board erred in failing to grant him one is without merit.

### IV.

▮▮▮ Hassan was entitled to a fair deportation hearing. *See Reyes–Palacios v. INS*, 836 F.2d 1154, 1155 (9th Cir.1988).

---

**2.** Even if Hassan's claims of financial hardship to his family were substantiated, this alone would be insufficient to prove extreme hardship. "Economic disadvantage alone does not constitute 'extreme hardship.'" *Ramirez–Durazo*, 794 F.2d at 499.

However, in such a hearing an alien is not entitled to the full panoply of due process rights. "A deportation hearing is purely a civil action to determine eligibility to remain in this country.... [V]arious protections that apply in the context of a criminal trial do not apply in a deportation hearing." *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984).

■ Hassan claims that the IJ's comments about Nigerians evidenced the IJ's bias, thus depriving Hassan of a fair hearing.[3] The Board recognized that the IJ's comments were, at best, inappropriate:

> "[N]o decision should ever rest, or even give the slightest appearance of resting, upon generalizations derived from a collective evaluation of members of any group of aliens. Every adjudication must be made on a case-by-case basis, and any inferences about the conduct of a particular individual which are based on the perceived characteristics of a national or ethnic group of aliens are out of place in immigration proceedings."

We need not determine whether the IJ's comments show a pervasive bias against Hassan, because an alien's due process rights have only been violated "if the thing complained of causes the alien to suffer some prejudice." *Nicholas v. INS*, 590 F.2d 802, 809 (9th Cir.1979). The factual record more than adequately supports the denial of Hassan's application, and we cannot say that any bias of the IJ was the basis for the denial of the application.

AFFIRMED.

---

3. At the outset of the proceedings, the IJ stated: Nigerians seem to have a lot of trouble with our banking laws in the United States. It just seems like over and over again they get in trouble with our banking laws.