988 F.2d 119
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ernesto L. HERNANDEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70556.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 22, 1993.*
Decided March 4, 1993.
 
 Petition to Review an Order Of the Board of Immigration Appeals; No. Ady-uoc-noq.
 B.I.A.
 PETITION DENIED.
 Before GOODWIN, SCHROEDER and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ernesto Hernandez, a native and citizen of the Philippines, petitions for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from the immigration judge's ("IJ") decision denying Hernandez's application for waiver of deportation under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) ("Act"). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). We review the BIA's decision for abuse of discretion, Hassan v. INS, 927 F.2d 465, 467 (9th Cir.1991), and we deny the petition for review.
 
 
 3
 * Background
 
 
 4
 On September 13, 1979, Ernesto Hernandez's present wife, Juleta, emigrated to the United States as a lawful permanent resident and established residency in Seattle, Washington.[1] In September 1985, Juleta acquired her United States citizenship and, in October 1985, she returned to the Philippines and married Hernandez. Hernandez entered the United States for the first time in June 1986.
 
 
 5
 Hernandez lived with Juleta in Seattle from June 1986 until November 1986, when he returned to the Philippines. In January 1987, Hernandez returned to Seattle. That same month, Hernandez traveled to Alaska in search of employment. From January 17, 1987 until November 5, 1987, Hernandez worked in an Alaskan cannery.
 
 
 6
 On November 5, 1987, Hernandez shot his supervisor in the arm with a gun. On August 16, 1988, Hernandez pleaded no contest and was convicted of Assault in the First Degree, in violation of Alaska Stat. § 11.41.200(a)(1). Hernandez received a sentence of five years. In March 1991, Hernandez was released from prison and returned to Seattle.
 
 
 7
 On September 21, 1989, the Immigration and Naturalization Service ("INS") issued Hernandez an order to show cause ("OSC") charging him with deportability pursuant to section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(2)(A)(1).[2] On January 31, 1991, Hernandez applied for adjustment of status to permanent resident pursuant to section 245, 8 U.S.C. § 1255, seeking a waiver of inadmissibility under section 212(h).
 
 
 8
 On December 3, 1991, at the deportation hearing in Seattle, Hernandez, represented by counsel, admitted the allegations of the OSC and conceded deportability. On March 5, 1992, the IJ held a hearing on the merits of Hernandez's application for waiver of deportability. The IJ received testimony from Hernandez, Juleta, Hernandez's probation officer, a friend of Hernandez, and Hernandez's brother-in-law. The IJ found that although Hernandez would not be a threat to the welfare, safety, or security of the United States, Hernandez failed to demonstrate extreme hardship. The IJ therefore denied Hernandez's request for section 212(h) waiver and ordered Hernandez deported to the Philippines.
 
 
 9
 On March 12, 1992, Hernandez appealed the IJ's decision to the BIA, contending that the IJ abused his discretion by failing to find that Hernandez had shown extreme hardship would result from deportation and that the IJ failed to consider all favorable factors and evidence. On July 8, 1992, the BIA dismissed Hernandez's appeal. The BIA found Hernandez failed to demonstrate extreme hardship. Moreover, the BIA stated that even if Hernandez met the statutory requirements of section 212(h), the BIA would have denied Hernandez's application in exercise of its discretion because of the seriousness of Hernandez's crime and the absence of significant countervailing equities. Hernandez timely petitions for review.
 
 II
 Analysis
 
 10
 Hernandez contends the BIA abused its discretion by finding that Hernandez's deportation would not result in extreme hardship to Juleta. This contention lacks merit.[3]
 
 
 11
 Pursuant to section 212(h), an excludable alien is entitled to relief if:
 
 
 12
 (1) he is the spouse, parent or child of a U.S. citizen or lawful permanent resident; (2) deportation would result in extreme hardship to the U.S. citizen or lawful permanent resident spouse, parent or child; (3) the alien's admission would not be contrary to the national welfare, safety or security of the United States; and (4) the Attorney General exercises discretion in the alien's favor.
 
 
 13
 8 U.S.C. § 1182(h). The BIA has authority to construe "extreme hardship" narrowly. INS v. Wang, 450 U.S. 139, 145 (1981). Nevertheless, we require the BIA to " 'state its reasons and show proper consideration of all factors when weighing equities and denying relief.' " Hassan, 927 F.2d at 467 (quoting Mattis v. INS, 774 F.2d 965, 968 (9th Cir.1985)). Extreme hardship will be found only where there is a "showing of significant actual or potential injury." Hassan, 927 F.2d at 468. "The common results of deportation or exclusion are insufficient to prove extreme hardship." Id. See also Matter of Shaughnessy, 12 I & N Dec. 810, 813 (BIA1968) (separation from family and financial difficulties alone are insufficient to establish extreme hardship).
 
 
 14
 Here, Hernandez failed to demonstrate that his deportation would cause Juleta extreme hardship. Juleta has lived most of her married life separated from Hernandez and is financially secure without Hernandez's income.[4] Although Juleta testified that she would miss Hernandez, she testified that she managed fine while Hernandez was incarcerated and that her life has not been different since Hernandez was released. Although Juleta testified that she is worried that there will be no one to care for her if she becomes sick, Juleta's brother lives near her.[5]
 
 
 15
 The "unique extenuating circumstances" necessary to establish "extreme hardship" are absent from Hernandez's case. See Ramirez-Durazo v. INS, 794 F.2d 491, 499 (9th Cir.1986). The BIA did not abuse its discretion by dismissing Hernandez's appeal. See Hassan, 927 F.2d at 468.
 
 
 16
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 For convenience, Ernesto Hernandez is referred to as Hernandez, and Juleta Hernandez is referred to as Juleta
 
 
 [2]
 Pursuant to section 241(a)(4), an alien convicted of a crime involving moral turpitude committed within five years after entry into the United States and sentenced to confinement therefore in a prison or corrective institution for a year or more is deportable
 
 
 [3]
 Hernandez also contends the BIA abused its discretion by going "beyond the immigration judge's decision" by finding that even if Hernandez met the statutory requirements of section 212(h), it would have denied relief in exercise of its discretion. This contention lacks merit. The BIA conducts a de novo review of the record and has the authority to make independent findings of fact and conclusions of law. Charlesworth v. INS, 966 F.2d 1323, 1325 (9th Cir.1992)
 
 
 [4]
 Hernandez contends the BIA improperly considered Juleta's financial situation during Hernandez's imprisonment. This contention lacks merit. Juleta's financial security was a relevant factor in determining "extreme hardship." See Ramirez-Durazo v. INS, 794 F.2d 491, 498 (9th Cir.1986)
 
 
 [5]
 Hernandez contends the BIA erred by not considering the political and financial conditions in the Philippines when evaluating the hardship Juleta would suffer if she returned to the Philippines with Hernandez. The record does not support this contention. Juleta testified that she would miss Hernandez if he was deported; she did not testify that she would return to the Philippines with Hernandez