33 F.3d 54
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Julius DIKE, Petitioner/Appellant,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent/Appellee.
 No. 93-3791.
 United States Court of Appeals, Sixth Circuit.
 Aug. 18, 1994.
 
 Before: MARTIN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The petitioner, Julius Dike, is an alien who contests a final order of deportation issued by the Board of Immigration Appeals. After an order to show cause was filed against him, charging that he was deportable for failure to comply with conditions of non-immigrant status, Dike conceded deportability and applied for the privilege of voluntary departure. The Board found him ineligible for voluntary departure due to a felony conviction in Texas. The petitioner subsequently moved to reopen his deportation hearings and filed a motion to reconsider after the Board denied the motion to reopen; the motion to reconsider was also denied by the Board. The petitioner then sought review by this court. The issue now before us is whether the Board abused its discretion when it refused to reconsider its prior denial of the petitioner's motion to reopen. We hold in the negative and affirm.
 
 
 2
 Julius Dike is a native and citizen of Nigeria who came to the United States in June 1982 on a student visa that authorized him to remain in this country only as long as he remained a student. He graduated from Ohio State University in 1984 with a bachelor's degree in chemistry. He then received a master's degree in chemical engineering in 1985, after which time he was no longer a student. In addition to over-staying his authorization, Dike had, by his own admission, violated work rules while he was a student.
 
 
 3
 In 1986, the INS issued an order to show cause charging that Dike was deportable under 8 U.S.C. Sec. 1251(a)(9) for failure to comply with his non-immigrant status. At a hearing before an immigration judge, the petitioner applied for the privilege of voluntary departure. In an oral decision, the immigration judge found the petitioner statutorily ineligible for relief because of a 1986 conviction in federal court in Texas for credit card fraud.[1] Dike appealed to the Board of Immigration Appeals, but the Board dismissed his appeal in June 1990, on the same grounds as those cited by the immigration judge.
 
 
 4
 Some 18 months later, in December 1991, the petitioner filed a motion to reopen the deportation proceedings and to stay his deportation. This motion was based upon an immediate-relative visa petition filed on the petitioner's behalf by his American wife, which petition had been made possible by changes in the law since Dike's previous hearing. The motion also alleged that the Texas district court's revocation of Dike's probation and imposition of a revised sentence of approximately four months' incarceration removed his conviction from the provisions of 8 U.S.C. Sec. 1251(a)(2). The Board denied the application in February 1992. The petitioner then filed a motion to reconsider this decision, which was denied in April 1993, resulting in a final order of deportation.
 
 
 5
 On appeal, Dike contends that the Board abused its discretion by denying his the petition to reopen the deportation proceeding and by refusing to consider his application for a waiver of inadmissibility under 8 U.S.C. Sec. 1182(h). Essentially, the petitioner seeks one of two privileges: (1) voluntary departure, under 8 U.S.C. Sec. 1254(e), or (2) an adjustment of status, to that of a permanent resident, under Sec. 1154(h), based on his 1986 marriage to a U.S. citizen.
 
 
 6
 The petitioner argues that Sec. 1251(a)(2), regarding crimes of moral turpitude which bar the privilege of voluntary departure, no longer applies to him. He was originally sentenced to a three-year suspended prison sentence. When his probation was revoked, he was sentenced to time served, which turned out to be less than the one-year prison term specified in Sec. 1251(a)(2)(A)(i)(II). Both the petitioner and the INS phrase their arguments in terms of whether or not the resulting four months in prison renders the offense a misdemeanor. However, Sec. 1251 makes no reference to either "felonies" or "misdemeanors." Instead, Sec. 1251(a)(2)(A)(i)(II) speaks simply in terms of a sentence in excess of one year; the actual time served is irrelevant. Although the petitioner served only four months of the sentence imposed in his case, at one time he had been subject to a sentence in excess of one year.
 
 
 7
 Essentially, the petitioner argues that the revocation of his probation and the resulting four-month period of incarceration left him in a better position, vis-a-vis his immigration status, than had he successfully completed his period of probation. We reject this contention out of hand. As a matter of public policy, it would be anomalous to conclude that one who violates probation is in a better position for immigration purposes than one who observes the conditions of probation. Indeed, the infractions for which the petitioner's probation was revoked raise further questions about his "good moral character", to the extent that good character is one of the prerequisites for voluntary departure under the statute. See note 1, supra.
 
 
 8
 Thus, regardless of the classification of the petitioner's federal conviction for credit card fraud as a misdemeanor or a felony, he is statutorily ineligible for voluntary departure. We conclude that the Board did not abuse its discretion on this issue.
 
 
 9
 A petitioner who does not qualify for voluntary departure may still apply for an adjustment of status under 8 U.S.C. Sec. 1255(a). Under this section, the Attorney General may, in her discretion, adjust the status of an alien inspected and admitted or paroled into the United States to that of an alien lawfully admitted for permanent residence if: (1) the alien applies for such adjustment, (2) he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed. An alien seeking to adjust his status to that of a lawful permanent resident is assimilated to the position of an applicant for entry into the United States. Palmer v. INS, 4 F.3d 482, 484 (7th Cir.1993); Pei-Chi Tien v. INS, 638 F.2d 1324, 1326 (5th Cir.1981); Yui Sing Tse v. INS, 596 F.2d 831, 834 (9th Cir.1979).
 
 
 10
 The record reflects that the first requirement of this three-part test has been satisfied in this case. It is the second requirement that presents a formidable and, we think, an insurmountable obstacle. Under 8 U.S.C. Sec. 1182(a)(9), an alien who has been convicted of a crime involving moral turpitude is ineligible to receive a visa and must be excluded from admission into the United States. However, it is possible to obtain a waiver of inadmissibility under 8 U.S.C. Sec. 1182(h). To qualify for such a waiver, a petitioner must show either that the crime for which the petitioner would be excluded occurred over 15 years ago, or that a U.S. citizen spouse or children would suffer extreme hardship because of the petitioner's departure. At the time the petitioner filed his motion to reopen, he was not statutorily eligible to receive a waiver. However, by the time the Board rendered its decision, Dike was eligible to receive a waiver if he could demonstrate "extreme hardship" to his U.S. citizen spouse, their daughter, and his three step-children, all of whom were receiving support from the petitioner.
 
 
 11
 We ordinarily extend great deference to the Attorney General's determination of what constitutes extreme hardship. INS v. Wang, 450 U.S. 139 (1981). The applicant bears the burden of proving extreme hardship; the Board must then assess the application by reviewing all claims in the context of the relevant facts. Hassan v. INS, 927 F.2d 465, 468 (9th Cir.1991). Extreme hardship can be found only where there is a "showing of significant actual or potential injury." Id. Because the common results of deportation or exclusion are insufficient to prove extreme hardship, id., the record must reflect "at least hardship substantially different from and more severe than that suffered by the ordinary alien who is deported." Sanchez v. INS, 755 F.2d 1158, 1161 (5th Cir.1985). Separation from family and financial difficulties alone are insufficient to establish extreme hardship. Palmer v. INS, 4 F.3d 482, 488 (7th Cir.1993); Osuchukwu v. INS, 744 F.2d 1136, 1142 (5th Cir.1984); Matter of Shaughnessy, 12 I & N Dec. 810, 813 (BIA 1968).
 
 
 12
 The petitioner made no showing of "extreme hardship" in either his motion to reopen or his motion to reconsider. He stated that he had supported his wife and family and introduced documents to that effect, but he demonstrated no unique circumstances which would work the extreme hardship contemplated by the statute. We can only conclude that the petitioner has failed to meet his burden on this issue and that the Board did not abuse its discretion in ruling against him on the question of extreme hardship.
 
 
 13
 For these reasons, the decision of the Board is AFFIRMED.
 
 
 
 [1]
 Dike had pleaded guilty to a charge of interstate credit card fraud in violation of 18 U.S.C. Sec. 1029(a)(2) in December 1986. He had fraudulently entered into a service station computer the credit card numbers of various customers and the amounts of phantom purchases. He then removed from the service station cash register cash equalling the phantom purchases. Over a two month period from January 1986 to March 1986, Dike stole $4,173.55 using this scheme. He was sentenced to a suspended sentence of three years in prison and was placed on probation for three years. His probation was revoked by a November 1989 court order for violating conditions of his probation. These violations included convictions for passing bad checks, domestic violence, and falsification, as well as failure to report to his probation officer. He was sentenced to time served, which equalled four months and sixteen days. The immigration judge found that this was a crime of moral turpitude within the meaning of 8 U.S.C. Sec. 1251(a)(2)