MATTER OF CHUMPITAZI

In Deportation Proceedings

A-19654637

*Decided by Board November 20, 1978*

(1) An alien, found deportable as a nonimmigrant visitor who remained in the United States beyond the period of his authorized stay, is precluded from relief under Article 32 of the United Nations Convention Relating to the Status of Refugees, which is limited to aliens lawfully in the United States.

(2) The provisions of Article 33 of the United Nations Convention Relating to the Status of Refugees have not changed the rights and remedies of an alien in deportation proceedings under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. 1253(h). *Matter of Dunar*, 14 I. & N. Dec. 310 (BIA 1973), reaffirmed.

(3) An immigration judge does not have the authority to consider requests for asylum in deportation proceedings since by regulation jurisdiction over such applications has been placed in the District Director. *Matter of Exantus and Pierre*, Interim Decision 2622 (BIA 1977), modified.

(4) A tax levied on all citizens of Peru who travel outside of that country is not persecution on account of race, religion, nationality, membership in a particular social group, or political belief, as contemplated by section 243(h) of the Immigration and Nationality Act.

(5) A claim to persecution under section 243(h) must be supported by evidence which is material, rather than by generalized undocumented assertions by the applicant. *Coriolan v. INS*, 559 F.2d 993 (5 Cir. 1977), distinguished.

(6) A delay by the Service of five years in acting upon an asylum application was not "affirmative misconduct" amounting to estoppel since the respondent was not directly deprived of any entitlement he had under the immigration laws, and he was given the opportunity to fully elucidate the bases for his fear of persecution in Peru at his deportation hearing.

(7) The loss of a job and the concomitant financial loss incurred is not "extreme hardship" within the meaning of section 244 of the Act, 8 U.S.C. 1254, despite an 11-year stay in the United States.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor— remained longer than permitted

ON BEHALF OF RESPONDENT:
Silver S. Squarcia, Esquire
Suite 1201 Ainsley Building
14 N.E. First Avenue
Miami, Florida 33132

ON BEHALF OF SERVICE:
George Indelicato
Appellate Trial Attorney

Robert Lee Erwin
Trial Attorney

BY: Maguire, Acting Chairman; Maniatis, Appleman, and Farb, Board Members

In a decision dated May 1, 1978, an immigration judge granted the respondent's request for asylum and certified his decisions to us for review. The Service has also filed an appeal from the decision. We will sustain the Service's appeal, and reverse the immigration judge's decision.

The respondent is a 31-year-old native and citizen of Peru who entered the United States on October 16, 1967, as a nonimmigrant visitor. On June 11, 1976, an Order to Show Cause was issued, charging the respondent with deportability under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2), as a nonimmigrant who had remained beyond the period of his authorized stay. At a deportation hearing held on June 22, 1976, and March 30, 1977, the respondent conceded deportability as charged in the Order to Show Cause, and applied for suspension of deportation under section 244(a)(1) of the Act, 8 U.S.C. 1254(a)(1), and/or withholding of deportation under section 243(h) of the Act, 8 U.S.C. 1253(h). On May 17, 1977, the immigration judge denied both applications, and the respondent appealed to this Board.

In a decision dated January 26, 1978, we remanded the record for further consideration of the respondent's 243(h) claim in light of the immigration judge's failure to examine the respondent under oath as required by 8 C.F.R. 242.17(c). On April 14, 1978, a new hearing was held, at which the immigration judge granted the respondent asylum if deportation to Guatemala, the country designated by the respondent for deportation as provided in 8 C.F.R. 242.17(c), was not possible. The immigration judge then certified his decision to us for review.

In his decision, the immigration judge referred to Article 33 of the United Nations Convention Relating to the Status of Refugees.[1] He interpreted Article 33 as allowing the grant of asylum to aliens whose life or freedom would be threatened on account of their race, religion, nationality, membership in a particular social group, or political opinion. He then stated that he would grant the respondent asylum if his deportation to Peru became imminent, i.e., if the country designated by the respondent, Guatemala, did not accept him into its territory or failed to notify the Attorney General within 90 days whether it would or would not accept him.

8 C.F.R. 242.8(a) provides, in part:

In any proceeding conducted under this part the special inquiry officer shall have the authority . . . to consider claims for relief from deportation under Articles 32 and 33 of the Convention Relating to the Status of Refugees, as amended by the Protocol Relating to the Status of Refugees . . . [and] to order temporary withholding of deportation pursuant to section 243(h) of the Act. . . . .

[1] 19 U.S.T. 6260, T.I.A.S. No. 6577, as amended by the Protocol Relating to the Status of Refugees, 19 U.S.T. 6224, T.I.A.S. No. 6577.

The text of Articles 32 and 33 of the Convention was stated in full in *Matter of Dunar*, 14 I. & N. Dec. 310 (BIA 1973). There, we reviewed the provisions of the Convention and found that they did not significantly change the immigration laws of the United States. Specifically, we found that Article 32 was limited by its terms to aliens "lawfully" within the United States. Thus, an alien refugee who entered lawfully as a nonimmigrant and remained unlawfully could not claim the relief of Article 32. This result has also been reached by the courts which have considered the issue. *See, e.g., Yan Wo Cheng v. Rinaldi*, 389 F. Supp. 583 (D. N.J. 1975); *Chim Ming v. Marks*, 367 F. Supp. 673 (S.D. N.Y. 1973), *aff'd*, 505 F.2d 1170 (2 Cir. 1974), *cert. denied*, 421 U.S. 911 (1975); *Kan Kam Lin v. Rinaldi*, 361 F. Supp. 177 (D. N.J. 1973), *aff'd*, 493 F.2d 1229 (3 Cir. 1974), *cert. denied*, 419 U.S. 874 (1974). Therefore, the finding that the respondent is deportable as an overstayed visitor precludes him from establishing lawful presence for the purposes of Article 32 relief.

In determining the effect of Article 33 on our immigration laws, we carefully reviewed the history of the Convention's adoption by the United States in *Matter of Dunar, supra*. We there held that there is no substantial difference in the coverage of section 243 (h) of the Act and Article 33, and that any distinctions in terminology [2] were insignificant and could be handled on a case-by-case basis. We reaffirm our holding in *Matter of Dunar* and find that the provisions of Article 33 of the Convention have not changed the rights and remedies of an alien in deportation proceedings who believes that deportation to a particular country would cause him to suffer persecution on the basis of race, religion, or political opinion. *See also Matter of Francois*, Interim Decision 2458 (BIA 1975).

There is no provision in the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. 1101 et. seq., for the granting of "asylum" to aliens who are seeking to enter or have entered the United States. Nor does the Refugee Convention declare that a contracting government *must* grant asylum to an alien refugee. The Convention goes no farther than to prohibit a contracting government from sending that alien back to a particular place where he will be persecuted. Since the alien could be deported immediately to any other territory that would accept him, it is inappropriate to characterize relief under Article 33 as a grant of asylum, which connotes governmental consent for some period of time to the alien's continued presence in the United States. The only provi-

---

[2] Specifically, section 243(h) in terms applies to persecution on account of "race, religion, or political opinion." Articles 1 and 33 of the Convention encompass the three quoted classes and add two more, "nationality" and "membership of a particular social group."

sion expressly allowing an alien subject to expulsion to seek asylum is 8 C.F.R. 108.1, which provides, in part, that [3]:

> ... An application for asylum by any ... alien who is within the United States ... shall be submitted on Form I-589 to the district director having jurisdiction over his place of residence ....

Moreover, 8 C.F.R. 108.2 does not permit an appeal from the District Director's decision. These regulations, as well as the Operations Instructions implementing them, were discussed in our decision in *Matter of Exantus and Pierre*, Interim Decision 2622 (BIA 1977). There, we held that where an alien requested asylum during the pendency of a deportation hearing, the immigration judge was required, under the provisions of Operations Instructions 242.13 [4] and 108.1(f)(2) [5], to adjourn the deportation proceedings until after a decision had been rendered on the asylum request by the District Director. *See generally Yan Wo Cheng v. Rinaldi, supra.*

In dictum, *Matter of Exantus and Pierre* stated that an application for relief from deportation under Articles 32 and 33 of the Convention Relating to the Status of Refugees constitutes an application for "asylum" within the meaning of 8 C.F.R. 108. However, nothing contained in 8 C.F.R. 242.8(a), the regulation setting forth the specific and general powers of decision conferred on immigration judges in deportation proceedings, has given them the authority to grant or deny asylum requests. Since the regulations vest the sole power to grant asylum in the District Director, an immigration judge lacks the power to rule upon applications for asylum as that term is used in 8 C.F.R. 108. We expressly disapprove of any language to the contrary in *Matter of Exantus and Pierre, id.*

Proceeding to consideration of the case before us, the immigration judge purported to grant the respondent "asylum" if deportation to

---

[3] The Service has proposed an amendment to 8 C.F.R. 108.1 which would permit an alien in exclusion proceedings to apply for asylum during the course of an exclusion hearing before an immigration judge, but would not allow an alien in deportation proceedings to apply for asylum with the District Director. *See* 43 F.R. 40802 (September 13, 1978); 43 F.R. 48620 (October 19, 1978).

[4] *Operations Instruction 242.13. Aliens requesting asylum after issuance of an Order to Show Cause.*

A hearing after issuance of an Order to Show Cause shall be deferred pending disposition of a request for asylum. Any such request shall be processed pursuant to OI 108.1(f).

[5] Operations Instruction 108.1(f)(2) provides, in part:

... In any case in which deportation proceedings have been initiated and the alien or his representative introduces a request for asylum, the special inquiry officer shall postpone the hearing to enable the district director to fully consider the bona fides of the request. ...

Peru became imminent. This, however, was incorrect. As we have previously stated, the immigration judge has no authority to grant asylum to an alien in deportation proceedings. A respondent in deportation proceedings may apply for relief from deportation under Article 33 of the Convention and/or section 243(h) of the Act, although there are no significant differences between the coverage of the two provisions. *Matter of Francois, supra.* We proceed now to examine whether the immigration judge's grant of "asylum" in this case was a proper grant of withholding of deportation under section 243(h) of the Act.

The respondent bases his claim that he would be persecuted if he were returned to Peru on two grounds: first, that he would be fined 200 soles for every day that he has spent outside of Peru and second, that he fears a return to the dictatorship in Peru after the time he has spent in the United States. It appears from the record that the respondent applied to the District Director in 1971 for political asylum. The trial attorney stated at the respondent's deportation hearing on June 22, 1976, that the District Director denied the respondent's application on May 7, 1976, (Tr. p. 5). There is no letter from the District Director to this effect in the record; however, there is a letter, dated January 21, 1977, stating that the District Director reconsidered the respondent's asylum claim and again denied it.

We find that the respondent has not established a claim to withholding of deportation under section 243(h) of the Act, which is available to those aliens in deportation proceedings who have a well-founded fear of persecution in the country of deportation on account of race, religion, nationality, membership in a particular social group, or political belief. *Matter of Dunar, supra; Matter of Bohmwald,* 14 I. & N. Dec. 408 (BIA 1973). *See also Cheng Kai Fu v. INS,* 386 F.2d 750 (2 Cir. 1967), *cert. denied,* 390 U.S. 1003 (1968). Additionally, the evidence presented has not demonstrated a clear probability of persecution directed at the individual respondent. *Cheng Kai Fu v. INS, id.*

In the present case, the respondent has not produced any evidence that would lead us to conclude that the asserted "fine" of 200 soles [6] a day would be assessed against him for any of the reasons enumerated in section 243(h). The respondent, at the hearing held on April 14, 1978, stated that neither he nor any member of his family had been involved in any way in political activities in Peru (Tr. p. 19). Moreover, the record contains a letter from the Vice Consul in charge of the Peruvian Consulate General which sets out the amount and terms of the tax levied on citizens of Peru travelling outside of that country which establishes that

---

[6] Although the respondent has represented throughout these proceedings that the "fine" would amount to $50 per day that he has been outside of Peru, the current foreign exchange indicates that the fine would actually be approximately $1.15 per day (Foreign Exchange, The Washington Post, October 13, 1978).

it is levied on *all* Peruvian citizens. Therefore, the respondent has not established that this tax is a form of "persecution" directed at him individually. *See generally Cheng Kai Fu v. INS, id.*

Similarly, the respondent's assertion that he does not wish to return to Peru because of the dictatorship in power there does not bring him within the terms of section 243(h). His claim in this regard amounts to no more than generalized undocumented assertions. The only evidence introduced by the respondent are newspaper articles referring to political conditions in Peru during a recent strike. We note that an alien who claims the relief of section 243(h) of the Act bears the burden of demonstrating a clear probability that he will be persecuted if deported. *Kashani v. INS,* 547 F.2d 376 (7 Cir. 1977). We find that the respondent's testimony, standing alone, is insufficient in this case to sustain that burden with regard to the likelihood of his being persecuted if returned to Peru. *See generally Pereira-Diaz v. INS,* 551 F.2d 1149 (9 Cir. 1977).

We believe that our decision in this case is supported by the Fifth Circuit's opinion in *Coriolan v. INS,* 559 F.2d 993 (5 Cir. 1977). There, the court reversed and remanded a Board decision denying 243(h) relief to two Haitian citizens in light of new evidence brought to the court's attention in the form of an Amnesty International Report. However, the court there found that the report, unavailable to them until after our decision had been rendered, *was* material to the respondents' cases. The respondent in the present case has presented no material evidence that would support his claim that the present leadership in Peru would persecute him. We also note that the *Coriolan* court implicitly recognized that a travel tax on *all* citizens would not amount to political persecution when it stated—

> It is not political persecution, for instance, to punish for violation of a fairly administered passport law.

559 F.2d at 1000. We find no support in *Coriolan v. INS* for the respondent's 243(h) claim. We will, therefore, reverse the decision of the immigration judge and sustain the Service's appeal filed in this case.

On appeal, the respondent also seeks to have us find that the Immigration and Naturalization Service should be estopped from deporting him because of their five-year delay in adjudicating his application for asylum. In *INS v. Hibi,* 414 U.S. 5 (1973), the Supreme Court implied that affirmative misconduct on the part of the Government might estop it from denying immigration benefits. However, we do not believe that the delay of the Service in acting upon the respondent's asylum application in this case is "affirmative misconduct." The respondent was not directly deprived of any entitlement he had under the immigration laws, and he was given the opportunity to fully elucidate the bases for his fear

of persecution in Peru at his deportation hearing. We will not, therefore, find that the Service is estopped from deporting respondent.

The respondent has also applied for suspension of deportation under section 244(a)(1) of the Act, 8 U.S.C. 1254(a)(1). Section 244(a)(1) provides eligiblity for suspension of deportation to an alien who has been continuously physically present in the United States for at least seven years, is a person of good moral character, and whose deportation would cause extreme hardship to himself, or to a United States citizen or lawful permanent resident spouse or child. Although the respondent has established that he has been physically present for the requisite period of time, and that during all that time he has been a person of good moral character, we find that he has not shown that his deportation would result in extreme hardship.

The personal privation contemplated in a situation characterized by "extreme hardship" within the meaning of section 244 of the Act is not a definable term of fixed and inflexible content or meaning. It necessarily depends upon the facts and circumstances peculiar to each case. *Matter of Hwang*, 10 I. & N. Dec. 468 (BIA 1964). The hardship requirement encompasses more than the mere economic deprivation that might result from an alien's deportation from the United States. *Davidson* v. *INS*, 558 F.2d 1361 (9 Cir. 1977); *Matter of Sipus*, 14 I. & N. Dec. 229 (BIA 1972). The respondent has claimed that his deportation would cause the loss of his job in the United States by which he supports his mother in Peru. The respondent also asserts that he would have difficulty adjusting to life in Peru after his 11-year stay in the United States.

We find that the hardship claimed by the respondent is not the type of hardship contemplated by Congress in providing for suspension of deportation. It has long been clear that the loss of a job and the concomitant financial loss incurred is not synonymous with extreme hardship. *Lee* v. *INS*, 550 F.2d 554 (9 Cir. 1977). Similarly, the readjustment of an alien to life in his native country after having spent a number of years in the United States is not the type of hardship that we have characterized as extreme, *see Matter of Uy*, 11 I. & N. Dec. 159 (BIA 1965); it is a type of hardship suffered by most aliens who have spent time abroad.

We have carefully considered the record as a whole and find that the respondent is not eligible for any form of relief from deportation other than voluntary departure, for which he is deserving. In accordance with our decision in *Matter of Chouliaris*, Interim Decision 2572 (BIA 1977), therefore, we will grant the respondent 30 days voluntary departure.

ORDER: The appeal is sustained and the conditional grant of asylum is vacated.

FURTHER ORDER: The applications for relief under sections 243(h) and 244(a) of the Immigration and Nationality Act are denied.

FURTHER ORDER: The respondent is permitted to depart from

the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director; in the event the respondent fails so the depart, the respondent shall be deported as provided in the immigration judge's order.