Yasser Abdulrahim SHOOSHTARY,
Petitioner,

v.

IMMIGRATION & NATURALIZATION
SERVICE, Respondent.

No. 93–70032.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1994.

Decided Nov. 8, 1994.

Cindy M. Cipriani, Gray, Cary, Ware & Freidenrich, San Diego, CA, for petitioner.

William J. Howard, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: WALLACE, Chief Judge, REINHARDT, Circuit Judge, and TANNER,* District Judge.

Opinion by Chief Judge Wallace; Dissent by Judge Reinhardt.

WALLACE, Chief Judge:

Yasser Abdulrahim Shooshtary seeks review of the judgment of the Board of Immigration Appeals (Board) denying his application for relief from deportation based on extreme hardship. The Board had jurisdiction pursuant to 8 C.F.R. §§ 3.1(B)(2), 242.21 (1992). We have jurisdiction over this timely application pursuant to 8 U.S.C. § 1105a(a). We deny the petition.

* Honorable Jack E. Tanner, United States District Judge, Western District of Washington, sitting by

## I

Shooshtary is a native of Iran and citizen of Great Britain. He lived in Great Britain, where his children attended grade school, until he came to the United States. His wife and 14–year–old twin children are legal permanent residents, but he is not. In June 1985, Shooshtary was convicted, upon a plea of guilty in federal district court, of conspiracy to defraud the government in violation of 18 U.S.C. § 371. After learning of the conviction, the Immigration and Naturalization Service (INS) sought to deport Shooshtary to Great Britain based upon the Immigration and Nationality Act, 8 U.S.C. § 1251, which makes deportable any alien who "is convicted of a crime involving moral turpitude committed within five years after the date of entry" and who is "[sentenced or confined] for a year or more." ' 8 U.S.C. § 1251(a)(4) (1988) (amended 1990).

Because he is married to a lawful permanent resident, Shooshtary requested that the attorney general change his status as an alien to that of a lawful permanent resident pursuant to 8 U.S.C. § 1255(a), thereby preventing deportation under section 1251(a)(4). Such a request can only be granted if, among other things, Shooshtary would be eligible to receive an immigrant visa and be admissible to the United States for permanent residence, as required by section 1255(a)(2). Because of Shooshtary's conviction, he was ineligible and so he requested a waiver of the section 1255(a)(2) requirement on the ground of extreme hardship to his permanent resident spouse and children, pursuant to 8 U.S.C. § 1182(h)(1)(B). The immigration judge and the Board denied the waiver, holding that Shooshtary failed to provide sufficient evidence showing extreme hardship to his family should he be deported to Great Britain. The effect of the Board's decision is that Shooshtary is not eligible to have his status changed to that of lawful permanent resident, and can therefore be deported.

## II

The determination by the Board that Shooshtary did not produce enough evi-

designation.

dence to make out a claim of extreme hardship under section 1182(h)(1)(B) is reviewed for abuse of discretion. *Hassan v. INS*, 927 F.2d 465, 467 (9th Cir.1991) (*Hassan*). The Board must "'state its reasons'" for denying relief, *id., quoting Mattis v. INS*, 774 F.2d 965, 968 (9th Cir.1985), and base its decision on "all relevant factors." *Id.* at 468. However, the applicant has the burden of proving extreme hardship. While the Board must consider all of the facts presented, any facts not brought to its attention cannot, obviously, be considered. *Diaz–Escobar v. INS*, 782 F.2d 1488, 1493 (9th Cir.1986) ("If the alien presents insufficient evidence to meet his burden of proof ... then there would be substantial evidence in the record to support a decision [that the alien is ineligible] even if the INS produces no evidence.").

▮▮▮ We agree with the Board's statement in this case that a section 1182(h)(1)(B) "waiver should be granted only in those cases where 'great actual or prospective injury' to the qualifying party will occur. There must be an 'extreme impact' on the citizen or lawful permanent resident family member...." *Citing Matter of Ngai*, 19 I & N Dec. 245 (BIA 1984). We hold that the Board did not abuse its discretion in concluding that Shooshtary failed to meet this burden as to his wife and children.

The Board held that Shooshtary testified in nonspecific terms, alleging that his wife cannot support the family should he be deported, that he would be unable to find employment in Great Britain at his age and with his qualifications, and that his children would be traumatized if separated from him. As the Board pointed out, he offered no evidence regarding his wife's income, no evidence why his family could not join him in Great Britain, no evidence why he believes that he could not gain employment in Great Britain, no evidence of his wife's inability to gain employment in Great Britain, and no evidence that his case was treated differently because of his Iranian descent.

In short, no evidence was presented by Shooshtary regarding the "extreme hardship" that his family would face other than generalities about having to move his family elsewhere, anticipated difficulties in finding work, and anticipated loss of friends. Such generalities are, of course, present when one moves to a new location. As we have stated before, "[t]he common results of deportation or exclusion are insufficient to prove extreme hardship." *Hassan*, 927 F.2d at 468, *citing Ramirez–Durazo v. INS*, 794 F.2d 491, 499 (9th Cir.1986). Extreme hardship "will not be found absent a showing of significant actual or potential injury." *Id., citing Matter of Ngai*, 19 I & N Dec. 245 (BIA 1984). The Board responded in kind to the generalities advanced by Shooshtary:

On appeal, the respondent argues that the "hardship his family will endure is extreme," noting in particular that his "children will lose the friends and lives they have enjoyed in this country" and that his wife "will experience the loss of a dream." However, the extreme hardship requirement of section 212(h)(2) was not enacted to insure that the family members of excludable aliens fulfill their dreams or continue in the lives which they currently enjoy. The uprooting of family, the separation from friends, and other normal processes of readjustment to one's home country after having spent a number of years in the United States are not considered extreme, but represent the type of inconvenience and hardship experienced by the families of most aliens in the respondent's circumstances. *See Matter of Chumpitazi*, 16 I & N Dec. 629 (BIA 1978).

Although we require the Board to state its reasons and properly consider all factors, *Hassan*, 927 F.2d at 467, the preciseness we require of the Board depends upon the preciseness of the proof offered by the petitioner. Here, Shooshtary provided only generalities. The Board's response was sufficient.

We hold that the generalities set forth by Shooshtary do not meet the burden required for showing extreme hardship. Thus, there was no basis for the attorney general to grant Shooshtary the waiver he sought. Therefore, the Board did not abuse its discretion.

### III

▮▮▮ Finally, Shooshtary argued on appeal that our recent case of *Rashtabadi v. INS*, 23

F.3d 1562 (9th Cir.1994), required the Board to consider rehabilitation as a factor when deciding a claim such as Shooshtary's.

That argument is wrong. *Rashtabadi* held that the Board must take rehabilitation into account when determining whether an adjustment in status is to be granted under 8 U.S.C. § 1255(a). Here, however, the issue is not whether an adjustment in status is to be granted, but rather whether Shooshtary *is eligible for* an adjustment in status. *Rashtabadi* first found that Rashtabadi *was* eligible for a status change because a Judicial Recommendation Against Deportation existed. *Id.* at 1570.

This case is thus one step removed from *Rashtabadi*—we are concerned here with whether a waiver of admissibility was properly refused by the Board for lack of "extreme hardship." *Rashtabadi*, on the other hand, had already answered the threshold question of whether Rashtabadi was eligible for admission under section 1255(a)(2). Having determined that 8 U.S.C. § 1182(a)(2) did not make Rashtabadi ineligible for an adjustment of status, the case found that rehabilitation must be considered when deciding whether to grant the change of status.

Therefore, *Rashtabadi* does not help Shooshtary. The Board is simply under no obligation to consider rehabilitation as a factor when deciding whether to grant a waiver of admissibility based on extreme hardship under 8 U.S.C. § 1182(h)(1)(B).

PETITION DENIED.

REINHARDT, Circuit Judge, dissenting:

In finding Mr. Shooshtary ineligible for relief, the Board of Immigration Appeals (BIA) gave short shrift to the key question: whether Mr. Shooshtary's wife or children would experience extreme hardship if he were deported. Because the BIA's decision fails adequately to consider the specific circumstances that underlie his claim, I dissent.

At his deportation hearing, Mr. Shooshtary testified that his family was very close, and that his children would be devastated if separated from him. Furthermore, he testified, his wife would not be able to keep up the payments on their home or otherwise support their family if he were deported. It was then stipulated that Mrs. Shooshtary would testify to the same effect. She also testified that, if the entire family were forced to leave the country, their lives would be ruined. Nevertheless, the Immigration Judge, with only the barest pretense of analyzing the individual circumstances involved, denied Mr. Shooshtary's request for relief and ordered him deported to Great Britain. The BIA affirmed the immigration judge's decision.

Mr. Shooshtary's wife and children are now United States citizens and were lawful permanent residents at the time of the hearing. Under 8 U.S.C. § 1182(h)(1)(B), Mr. Shooshtary would be eligible for relief if his deportation would cause his wife, his son, or his daughter extreme hardship. In making its extreme hardship determination, the BIA must state its reasons and show that it has properly considered *all* relevant factors. *Hassan v. INS*, 927 F.2d 465, 467 (9th Cir. 1991); *Batoon v. INS*, 707 F.2d 399, 401 (9th Cir.1984). Cursory, summary or conclusory statements are inadequate, because the determination of hardship depends on the specific circumstances of each case. *Sullivan v. INS*, 772 F.2d 609, 610 (9th Cir.1985); *Hassan*, 927 F.2d at 468.

Unfortunately, the majority, in as cursory an opinion as that of the BIA, ignores the Board's failure to consider the hardship that the various members of Mr. Shooshtary's family, including the children, might experience. In cases concerning a parent of citizens or permanent residents, the BIA must consider both the hardship that will result if children follow a deported parent to a new country *and* the hardship that will result if the family is separated. *Cerrillo–Perez v. INS*, 809 F.2d 1419, 1422–23 (9th Cir.1987). Here, the BIA paid insufficient attention to the first issue and none at all to the second. It merely stated that moving to a new country after several years in the United States "represent[s] the type of inconvenience and hardship experienced by the families of most aliens in the respondent's circumstances." Such summary, general, and non-individualized statements "fail adequately to reveal the BIA's reasoning and constitute an abuse of discretion." *Saldana v. INS*, 762 F.2d 824,

828 (9th Cir.1985) (citing *Zavala–Bonilla v. INS,* 730 F.2d 562, 568 (9th Cir.1984)); see also *Prapavat v. INS,* 662 F.2d 561 (9th Cir.1981) (per curiam) (reversing BIA decision that failed to give individualized consideration to claims of financial hardship). The BIA's failure to make individualized determinations as to the hardship that Mr. Shooshtary's wife and children would suffer if the entire family were forced to emigrate is contrary to the requirement established by our cases. See *Jara–Navarrete v. INS,* 813 F.2d 1340 (9th Cir.1986) (reversing BIA judgment because it contained only a single-sentence determination that the petitioner's children would not suffer extreme hardship).

Moreover, the BIA's opinion clearly errs in its "analysis" of the economic hardship that Mr. Shooshtary's family would suffer if he were to be separated from his wife and two children. The BIA's decision asserts that Mr. Shooshtary had produced "no evidence" regarding the inadequacy of his wife's income to support the family alone. That assertion is directly contrary to the record. In fact, Mr. Shooshtary testified that his wife, who works in a delicatessen, would be unable to make payments on their house or otherwise support the family by herself. Furthermore, the hearing officer accepted an offer of proof that Mrs. Shooshtary would testify that she would be unable to support herself and the couple's two children in the United States if her husband were deported.

Even if the BIA had properly considered the economic consequences of separation on the family as a whole, however, we would be required to reverse—because the BIA failed to meet its obligation to make individualized determinations of how separation from their father would affect the two children. Mr. Shooshtary is the parent of a son, Sam, and a daughter, Amanda. Under *Cerrillo–Perez,* the BIA must "consider the specific circumstances" of each of these children and reach "an express and considered conclusion as to the effect of those circumstances upon [them]." *Id.* at 1426. Here, the BIA completely neglected this responsibility by failing to give *any* individual consideration to the hardships that either Sam or Amanda would experience.

In failing to discuss the individual circumstances of Mr. Shooshtary's permanent resident children, the BIA overlooked his specific testimony to the effect that the two children would suffer gravely from his absence. At the hearing, Mr. Shooshtary testified that his son and daughter were nine years old, twins, and in the fourth grade. Mr. Shooshtary described his family as "very, very close," and his testimony showed him to be deeply involved in his children's education. Both children had repeated the first grade upon arriving in the United States but, at Mr. Shooshtary's urging, their teachers permitted the children to skip the second grade. At his hearing, Mr. Shooshtary reported that his son and daughter were doing well in school with B+ grades. He further testified that breaking up the family would have a drastic effect on them—on "their brains, their thoughts, their education, their hearts too." Mr. Shooshtary said that, if separated from their father, his "son would cry ... day after day calling for me, my daughter too."

Unfortunately, the BIA's decision does not consider any of this evidence, and fails to address the question whether the children would suffer significantly or at all—emotionally, educationally, or socially—if separated from their father. Thus, contrary to the majority's conclusion, the Board did not consider all the circumstances put forward by Mr. Shooshtary. Nor, of course, contrary to the majority's contention, did Mr. Shooshtary's testimony consist solely of vague generalities. The BIA (like the majority) wholly ignores Mr. Shooshtary's direct and specific testimony regarding his children, and utterly fails to undertake the individualized consideration of the consequences of separation on each child, as *Cerrillo–Perez* requires.

The BIA failed properly to consider the relevant factors bearing on the issue of extreme hardship, a failure that the majority erroneously excuses. I would reverse the BIA's decision and remand for a proper review.