74 F.3d 1245
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paulino FERAREN, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70040.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 16, 1995.
Decided Jan. 3, 1996.
 
 1
 Before: WALLACE, Chief Judge, LEAVY, Circuit Judge, and BAIRD,* District Judge.
 
 MEMORANDUM
 
 2
 Feraren seeks review of the Board of Immigration Appeals' (Board) denial of his application for relief from deportation based on extreme hardship. The Board had jurisdiction pursuant to 8 C.F.R. Secs. 3.1(b)(2), 242.21(a) (1995). We have jurisdiction over this timely application pursuant to 8 U.S.C. Sec. 1105a(a). We deny the petition.
 
 
 3
 The Board's determination that Feraren failed to demonstrate extreme hardship pursuant to 8 U.S.C. Sec. 1254(a)(1) is reviewed for an abuse of discretion. INS v. Jong Ha Wang, 450 U.S. 139 (1981) (Wang ). Feraren contends that the Board failed to consider adequately his poor health, lack of employment opportunities in the Philippines, and separation from his family in the United States. He also contends that the Board failed to consider these factors aggregately. Feraren bears the burden of proving extreme hardship. Shooshtary v. INS, 39 F.3d 1049, 1051 (9th Cir.1994) (Shooshtary ).
 
 
 4
 The Board did not abuse its discretion in its determination that Feraren did not produce enough evidence to demonstrate extreme hardship. The Board's decision states its reasons for denying relief, and it is based on a consideration of "all relevant factors." Id. As to Feraren's health claims, the Board acknowledged that Feraren testified that he has chronic health problems, that these problems may be treated successfully in the United States, and that he is "not guaranteed that he could obtain, or afford health care in the Philippines." The Board properly found that this does not rise to the level of extreme hardship. Id. (extreme hardship requires great actual or prospective injury); see also Wang, 450 U.S. at 145 (stating that "extreme hardship" indicates the "exceptional nature of the suspension remedy").
 
 
 5
 Furthermore, the Board considered the relevant factors pertaining to Feraren's health claims in a manner that corresponds with the "preciseness of the proof offered by [Feraren]." Shooshtary, 39 F.3d at 1051. For example, Feraren asserted that the medications he currently receives through his health care plan in the United States may not be available in the Philippines, yet he provided no evidence of the general availability or cost of these medications in the Philippines. Similarly, Feraren testified that pollution resulting from the eruption of Mount Penatubo in the Philippines would "affect [his] health ... [b]ecause [he] has asthma." He supported this testimony with a letter from his doctor, which states merely that Feraren could receive "better health care in this country, especially where atmospheric pollution is not nearly so intense as it is currently in the Phillipine [sic] Islands." Although this letter confirms Feraren's testimony that his former residence is in a heavily polluted area of the Philippines, it says nothing about whether Feraren would be able to receive adequate health care there. Moreover, it says nothing of the atmospheric conditions in other areas of the Philippines.
 
 
 6
 This case therefore is distinguishable from Watkins v. INS, 63 F.3d 844 (9th Cir.1995), in which we held that the Board's failure to consider a psychologist's opinion addressing the effects of deportation on the petitioner's citizen child constituted an abuse of discretion. Id. at 849. The psychologist's affidavit in Watkins specifically identified certain conditions in the Philippines that would affect the child's Attention-Deficit-Hyperactivity-Disorder, and it opined on the consequences these conditions could have on the child's health. Id. In this case, the letter from Feraren's doctor states only that Feraren could receive better care in the United States and that the pollution in the Philippines is worse than in the United States. Feraren's doctor did not say how the conditions in the Philippines would affect Feraren's health or whether medical attention in the Philippines could help avoid any adverse affects. See Vasquez v. INS, 767 F.2d 598, 602 (9th Cir.1985) (Vasquez ) (doctor's conclusory allegations of emotional distress that petitioner may suffer upon deportation are not sufficient basis for relief). Because Feraren provided only general evidence of his ability to obtain medicine and medical care in the Philippines, the Board could respond with a general response. Shooshtary, 39 F.3d at 1051.
 
 
 7
 Feraren also asserts that the Board failed to consider whether he could find work in the Philippines or other means of support. The Board, however, recognized that Feraren had retired from his position at a Philippino telephone company after 24 years of service and that he currently receives a retirement pension from the Philippine government. The Board further acknowledged Feraren's testimony that his health problems do not preclude him from working if he receives adequate treatment. Based on this evidence, the Board concluded that although Feraren may not be able to live in the style in which he has grown accustomed in the United States, he has not shown extreme hardship based on the inability to support himself.
 
 
 8
 Feraren next contends that the Board failed to consider the effect of separation from relatives in the United States. The Board is required to consider the effects of deportation only on United States citizen or lawful permanent resident relatives. 8 U.S.C. Sec. 1254(a)(1). The Board stated that Feraren has one daughter who is a lawful permanent resident, but that she visits him only once a year. The Board did not abuse its discretion by finding that Feraren's inability to visit with his daughter once each year results in extreme hardship. Vasquez, 767 F.2d at 602 (mere existence of a citizen spouse, without evidence of hardship unique to the petitioner, does not establish extreme hardship).
 
 
 9
 Finally, Feraren asserts that the Board failed to consider the cumulative effect of the adverse consequences of deportation. The Board, however, recognized that "[r]elevant factors, though not extreme in themselves, must be considered in the aggregate in determining whether extreme hardship exists." (Internal quotations omitted.) In finding that Feraren's claims did not rise to level of extreme hardship, the Board necessarily held that Feraren's evidence in the aggregate was insufficient.
 
 
 10
 PETITION DENIED.
 
 
 11
 Note: This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.
 
 
 
 *
 Honorable Lourdes G. Baird, United States District Judge, Central District of California, sitting by designation