77 F.3d 488
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Luis Antonio CRUZ-VILCHEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70266.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 9, 1996.*
Decided Feb. 13, 1996.
 
 Before: WALLACE, Chief Judge, T.G. NELSON, Circuit Judge, and BROWNING,** District Judge.
 MEMORANDUM
 Cruz-Vilchez petitions for review of the Board of Immigration Appeals' (Board) decision denying his third application for a motion to reopen deportation proceedings so that he may apply for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1). We affirmed the Board's previous decisions denying Cruz-Vilchez's first two motions to reopen in Cruz-Vilchez v. INS, Nos. 92-70434 and 93-70311 (9th Cir. Jan. 12, 1994). On Cruz-Vilchez's third motion to reopen, the Board once again held that Cruz-Vilchez failed to make out a prima facie showing of extreme hardship, a required element to establish eligibility for suspension of deportation under section 1254(a)(1). The Board exercised jurisdiction pursuant to 8 C.F.R. § 3.2 (1995). We have jurisdiction over this timely application pursuant to 8 U.S.C. § 1105a(a). We deny the petition.
 We review the Board's denial of a motion to reopen and its determination that Cruz-Vilchez failed to demonstrate extreme hardship for an abuse of discretion. INS v. Doherty, 502 U.S. 314, 323 (1992); INS v. Jong Ha Wang, 450 U.S. 139 (1981) (Wang ). "The Board must 'state its reasons' for denying relief, and base its decision on 'all relevant factors.' " Shooshtary v. INS, 39 F.3d 1049, 1051 (9th Cir.1994) (Shooshtary ), quoting Hassan v. INS 927 F.2d 465, 467-68 (9th Cir.1991) (Hassan ) (other internal quotation and citation omitted). Cruz-Vilchez, however, bears the burden of proving extreme hardship. Shooshtary, 39 F.3d at 1051. "Extreme hardship 'will not be found absent a showing of significant actual or potential injury.' " Id., quoting Ramirez-Durrazo v. INS, 794 F.2d 491, 499 (9th Cir.1986); see also Wang, 450 U.S. at 145 ("extreme hardship" indicates the "exceptional nature of the suspension remedy").
 Cruz-Vilchez contends that the Board abused its discretion by failing to consider adequately seven factors he argues establish extreme hardship. First, Cruz-Vilchez asserts that the Board failed to consider his educational history in the United States and the effect deportation may have on his future educational opportunities. The Board specifically addressed this factor, stating that Cruz-Vilchez provided no evidence of Nicaragua's reduced educational opportunities. Even if Cruz-Vilchez had provided sufficient evidence, the Board held that lessened educational opportunities do not necessarily result in extreme hardship. See Wang, 450 U.S. at 139, 144-45 (no abuse of discretion where Board held loss of educational opportunities did not constitute extreme hardship). Cruz-Vilchez now argues that the Board also failed to consider the "emotional impact that an abrupt curtailing of his academic life would have" on him. His affidavit in support of his motion to reopen, however, does not mention any such emotional impact, nor does it provide any objective evidence supporting this belated assertion. Because Cruz-Vilchez asserted mere generalities concerning the educational opportunities in Nicaragua, the Board's response was sufficient. Shooshtary, 39 F.3d at 1051.
 Second, Cruz-Vilchez argues generally that the Board failed to consider all of his hardship factors cumulatively, and specifically that the Board failed to weigh reduced educational opportunities in Nicaragua cumulatively with his other hardship factors. This argument also lacks merit because the Board stated that it "considered all the evidence of record both cumulatively and individually." The Board further stated that it "reviewed the record in its entirety."
 Third, Cruz-Vilchez contends that the Board showed "complete indifference to [his] academic achievements." To the contrary, in its May 14, 1992, decision denying Cruz-Vilchez's first motion to reopen (incorporated by reference in the Board's decision at issue) the Board recognized that Cruz-Vilchez "graduated with honors at various schools in the United States and wishes to continue his studies in this country."
 Fourth, Cruz-Vilchez argues that the Board failed to consider that he fears persecution if deported to Nicaragua. In his affidavit, Cruz-Vilchez stated that he "would be regarded with great suspicion" in Nicaragua, is "extremely scared of the Sandinistas," and fears they "will seek to harm [him]." The Board specifically addressed these contentions. It found that Cruz-Vilchez provided "no evidence to support [his] general allegations," and that no evidence showed that persons similarly situated have been harmed upon return to Nicaragua "merely because they resided in the United States." Cruz-Vilchez's related argument that the Board abused its discretion by failing to mention his denied asylum application similarly lacks merit. Not only have we held that the Board "may conclude that claims of political persecution have no relation to a determination of 'extreme hardship,' " Kashefi-Zihagh v. INS, 791 F.2d 708, 710 (9th Cir.1986), but an immigration judge (IJ) and the Board already have rejected Cruz-Vilchez's asylum claim. Furthermore, the IJ doubted the credibility of Cruz-Vilchez's alleged fear of persecution in Nicaragua, stating: "[Cruz-Vilchez] is reluctant at best to return to Nicaragua. I am not absolutely sure from his testimony or [from] observing him that he has a fear of returning but I will accept that fact for the purpose of this hearing." It therefore appears that the Board gave Cruz-Vilchez the benefit of the doubt by reconsidering his fears of returning to Nicaragua.
 Fifth, Cruz-Vilchez argues that the Board failed to consider his close ties with family members residing in the United States and the emotional distress he would experience if deported to Nicaragua where no close family members reside. The Board thoroughly considered these facts, and it found that Cruz-Vilchez's separation from his mother, two sisters, a brother, and his grandmother, all lawful permanent residents, did not constitute extreme hardship. The Board recognized that emotional hardship on family members always occurs when a loved one is deported, but that Cruz-Vilchez failed to provide evidence of " 'unique' or 'severe' emotional hardship" to either Cruz-Vilchez or his family in the United States. See Vasquez v. INS, 767 F.2d 598, 602 (9th Cir.1983). The Board also observed that three of his family members in the United States received lawful permanent resident status after a final order of deportation was issued against Cruz-Vilchez. It therefore gave this factor less weight, as it is entitled to do. Carnalla-Munoz v. INS, 627 F.2d 1004, 1007 (9th Cir.1980); Matter of Correa, Int.Dec. 2973, 19 I & N Dec. 130, 134 (BIA 1984). Finally, the Board found this factor mitigated by the fact that Cruz-Vilchez may apply for an immigrant visa to rejoin his family in the United States. Cruz-Vilchez points out that he may have to wait approximately seven years to return lawfully to the United States, as must all other similarly-situated immigrant applicants. As the Supreme Court has stated, however, Cruz-Vilchez's strategy of remaining in the United States seven years to secure a suspension of deportation will not be tolerated as it " 'is not fair to those waiting for a quota.' " Wang, 450 U.S. at 145, quoting Wang v. INS, 622 F.2d 1341, 1352 (9th Cir.1980) (Goodwin, J., dissenting).
 Sixth, Cruz-Vilchez contends that the Board failed to consider the hardship caused by separation from his six-year girlfriend, allegedly a lawful permanent resident in the United States. Cruz-Vilchez failed to provide evidence of his girlfriend's immigration status, thus the Board did not consider her a lawful permanent resident in finding that Cruz-Vilchez's separation from his girlfriend would not result in extreme hardship. This conclusion did not result in an abuse of discretion because the Board is not required to consider evidence not before it. Shooshtary, 39 F.3d at 1051.
 Finally, Cruz-Vilchez argues that the Board failed to consider the degree to which he has established "roots" in the United States. The Board, however, considered the record in its entirety, recognized Cruz-Vilchez's work and educational history in the United States, and thoroughly discussed his family and other ties in the United States. Although it may be true that severing his roots in the United States will cause distress, we have recognized that such consequences "are, of course, present when one moves to a new location." Id. Nevertheless, "the common results of deportation or exclusion are insufficient to prove extreme hardship." Id., quoting Hassan, 927 F.2d at 468.
 In finding that Cruz-Vilchez's deportation to Nicaragua would not result in extreme hardship, the Board considered all relevant factors. Thus, it did not abuse its discretion in finding no extreme hardship and in denying Cruz-Vilchez's third motion to reopen deportation proceedings. " 'Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case.' " INS v. Abudu, 485 U.S. 94, 108 (1988), quoting Villena v. INS, 622 F.2d 1352, 1362 (9th Cir.1980) (Wallace, J., dissenting).
 
 
 1
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable William D. Browning, United States District Judge, District of Arizona, sitting by designation