92 F.3d 1192
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Oscar Dan ETIM, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70292.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 11, 1996.*
Decided July 26, 1996.
 
 Before: WOOD, JR.,** CANBY, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Oscar Dan Etim petitions this court for review of a decision of the Board of Immigration Appeals ("BIA" or "the Board") denying his applications for registry under § 249 of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1259, and for waiver under § 212(h) of the Act, 8 U.S.C. § 1182(h). For the reasons provided below, we affirm the Board's decision.
 
 I. BACKGROUND
 
 3
 Etim, a native and citizen of Nigeria, lawfully entered the United States under a six-month, non-immigrant visa in 1968 to attend a church convention. During Etim's stay in the United States, a civil war erupted in Nigeria and most, if not all, of Etim's family perished in the fighting. Etim was a teenager at the time and his church arranged for him to be placed with guardians in Homer, Alaska. Etim's status, however, was never officially adjusted and the Immigration and Naturalization Service ("INS" or "the Service") seemingly lost track of him.
 
 
 4
 Etim attended high school in Alaska from 1968 to 1972. After graduating, he attended the University of Alaska for a period of time, but he did not earn a degree. The record indicates that from 1974 until 1993 Etim held various jobs in Alaska, Arizona, and Nevada.
 
 
 5
 Etim's experiences in this country were not wholly edifying, however. He also engaged in criminal conduct: During his deportation proceedings, Etim admitted to having used cocaine in 1979 and methamphetamine in 1987; in 1989, he pleaded guilty to shoplifting and providing false information to a police officer; and in 1994, he pleaded guilty to attempted coercion,[1] a felony. As a result of his coercion offense, Etim was sentenced to one year in jail. The record indicates that Etim actually served approximately nine and one half months of this sentence.
 
 
 6
 Following his incarceration, the Service commenced deportation proceedings. On December 10, 1994, an Immigration Judge ("IJ") found that Etim was deportable. Etim conceded his deportability, but applied for registry under § 249 of the Act and for waiver under § 212(h) of the Act. The IJ denied Etim's applications and ordered that he be deported to Nigeria.[2] Etim appealed and on March 16, 1995, the Board affirmed the IJ's decision. Etim then petitioned this court for review.
 
 II. DISCUSSION
 A. Denial of Registry Under § 249
 
 7
 Under § 249 of the Act, an alien who is present unlawfully in the United States may, in the discretion of the Attorney General, nonetheless remain if he establishes that he (1) entered the United States prior to January 1, 1972; (2) has resided here continuously since that entry; (3) is of good moral character; and (4) is eligible for citizenship. 8 U.S.C. § 1259. The Board affirmed the IJ's finding that Etim is not of good moral character in light of his admission of past drug use and his criminal record.
 
 
 8
 The determination that an alien lacks good moral character is a factual one, and as such, we subject it to the substantial evidence standard upon review. 8 U.S.C. § 1105a(a)(4). Under this standard, we must uphold the Board's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. We may only arrive at a factual conclusion different from that reached by the BIA if "the evidence not only supports that conclusion, but compels it." INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992). After reviewing the record in this matter, we cannot conclude that it compels a finding different from that reached by the Board.
 
 
 9
 The Board's good moral character determination was dictated by the terms of the Act. The Act expressly states that a person may not be found to be a person of good moral character if, "during that period for which good moral character is required to be established," that person "has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more." 8 U.S.C. § 1101(f)(7). As mentioned above, Etim was confined to a penal institution for a period of approximately nine and one half months following his attempted coercion conviction. This confinement immediately preceded Etim's deportation proceedings. Furthermore, Etim has not introduced any evidence that his character has changed since the occurrence of the incident for which he was incarcerated. See Matter of Sanchez-Linn, Interim Dec. 3156 (BIA 1991). Therefore, we conclude that substantial evidence supports the Board's finding that Etim lacks good moral character under the terms of the Act. Thus, we need not discuss the impact of Etim's admission of past drug use nor his earlier plea of guilty to shoplifting.
 
 B. Ineligibility for Waiver Under § 212(h)
 
 10
 Etim also alleges that the Board erred when it failed to grant him relief under § 212(h) of the Act, 8 U.S.C. § 1182(h).
 
 
 11
 Under section 212(h), the alien is entitled to relief if: (1) he is the spouse, parent or child of a U.S. citizen or lawful permanent resident; (2) deportation would result in extreme hardship to the U.S. citizen or lawful permanent resident spouse, child, or parent; (3) the alien's admission would not be contrary to the national welfare, safety or security of the United States; and (4) the Attorney General exercises his discretion in the alien's favor.
 
 
 12
 Moran-Enriquez v. INS, 884 F.2d 420, 422 (9th Cir.1989). Etim contends that the Board erred when it concluded that he had failed to establish that his daughter would suffer extreme hardship if he were deported. The Board's determination in this regard is reviewed for an abuse of discretion. Shooshtary v. INS, 39 F.3d 1049, 1050-51 (9th Cir.1994) (citation omitted).
 
 
 13
 The record regarding Etim's daughter is sparse; Etim introduced only his own testimony, which the IJ assumed to be true. According to Etim's testimony, he was not even aware of the existence of his daughter until approximately four years ago, when she was fifteen years of age. Etim has had no personal relationship whatsoever with his daughter since then. He has seen her only once, in court, when he responded to a summons pertaining to child support. Etim paid child support through the State of Nevada for a period of one year, until he was incarcerated for attempted coercion. Etim has introduced no further evidence regarding hardship to his daughter.
 
 
 14
 We have previously agreed that a finding of extreme hardship is appropriate " 'only in those cases where "great actual or prospective injury" to the qualifying party will occur. There must be an "extreme impact" on the citizen or lawful permanent resident family member.' " Shooshtary, 39 F.3d at 1051 (quoting the BIA's decision in the case below) (quoting Matter of Ngai, 19 I & N Dec. 245, 246, 247 (BIA 1984)). While it might be true that Etim's daughter may suffer some quotient of hardship if he is deported, as Etim will presumably never thereafter provide any financial support, we cannot conclude that the Board abused its discretion when it concluded that this hardship would not be "extreme."
 
 III. CONCLUSION
 
 15
 For the reasons provided above, the decision of the Board is affirmed.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The record indicates that Etim became involved in an altercation with a woman in his apartment over an outstanding loan. Etim allegedly detained the woman against her will for approximately two hours. The confrontation ended when a struggle over a handgun resulted in the firing of several shots which drew the police to the scene. Etim was initially charged with first degree kidnapping with use of a deadly weapon and battery with intent to commit a crime; he later pleaded guilty to the lesser crime of attempted coercion
 
 
 [2]
 Etim designated Nigeria as the country of deportation; he has expressed no fear of returning to his native country