106 F.3d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Milagros Guillermo PARCHAMENTO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70491.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1996.
Decided Jan. 24, 1997.
 
 Petition for Review of a Decision of the Immigration and Naturalization Service, No. Arf-lih-lnp.
 BIA
 REVIEW DENIED.
 Before: FLETCHER, FARRIS, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Milagros Guillermo Parchamento, a Philippine citizen living illegally in the United States, has been ordered deported. At her deportation hearing she moved for suspension of deportation under § 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1), which authorizes the Immigration and Naturalization Service (INS) to suspend deportation if, inter alia, deportation will cause the alien "extreme hardship." The immigration judge (IJ) found that deportation would not cause Parchamento extreme hardship and the Board of Immigration Appeals (BIA) affirmed the decision of the IJ and dismissed the appeal. We now deny her petition for review. However, because Parchamento now maintains that since her hearing she has married a United States citizen, we will withhold the mandate for 45 days to enable her to move to reopen before the BIA or seek adjustment of status or both.
 
 I. Extreme Hardship
 
 3
 We review decisions denying suspension of deportation only for abuse of discretion, Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995), and may not substitute our understanding of the meaning of extreme hardship for that of the INS. INS v. Jong Ha Wang, 450 U.S. 139, 144 (1981). To exercise its discretion properly, the BIA must give full consideration to "all pertinent facts regarding extreme hardship," Tukhowinich, 64 F.3d at 463, articulate reasoned explanations for its conclusions, Hassan v. INS, 927 F.2d 465, 467-68 (9th Cir.1991), and consider whether the cumulative effect of the particular hardships amounts to extreme hardship. Prapavat v. INS, 662 F.2d 561, 562 (9th Cir.1981). In this case, the BIA, in a per curiam, reviewed whether the IJ erred in finding that petitioner had not established extreme hardship. It simply stated that the IJ had properly considered the relevant factors and concluded "[the petitioner] simply has not presented factors which establish either individually or cumulatively that her hardship upon deportation will rise to the level which would warrant the extraordinary relief of suspension of deportation." BIA op., at 2. Accordingly, our review is of the IJ's decision.[1]
 
 
 4
 Parchamento argues that the IJ abused his discretion by failing properly to consider several hardships she will suffer if deported. In particular, she argues that the IJ did not adequately consider that deportation will: (1) sever her ties to an American family with whom she has lived and worked for more than ten years, (2) sever her ties to her American community, (3) condemn her to poverty, and (4) require her to readjust to a society that has changed dramatically since she left. We disagree.
 
 
 5
 Parchamento argued that deportation would cause her extreme hardship because it would sever her ties with the Enriquez family, American citizens for whom she has worked as live-in housekeeper and nanny since 1985. She described her relationship with the Enriquez family as family-like, testifying that she has often been the primary caregiver for the Enriquez children (now 11 and 2 years old), that she has become "a part of" the Enriquez family, and that the Enriquezes have told her that she is part of their family. Severance of such family-like relationships can cause extreme hardship, Contreras-Buenfil v. INS, 712 F.2d 401, 403 (9th Cir.1983) (severance of "family-type relationship" can cause extreme hardship), as at least two circuits have recognized in cases involving live-in housekeeper-nannies like Parchamento. Zamora-Garcia v. INS, 737 F.2d 488, 491-92 (5th Cir.1984); Antoine-Dorcelli v. INS, 703 F.2d 19, 21 (1st Cir.1983).
 
 
 6
 Nevertheless, the IJ did not abuse his discretion in rejecting Parchamento's claim. Rather, he properly acknowledged Parchamento's testimony regarding her relationship with the Enriquez family and gave a reasoned explanation for rejecting it. The relationship between Parchamento and the Enriquez family, the IJ said, has not evolved beyond the typical relationship between an employer and an employee. Severance of such a relationship cannot amount to extreme hardship: "the common results of deportation ... are insufficient to prove extreme hardship," Hassan, 927 F.2d at 468, and "the uprooting of family, [and] the separation from friends [that normally accompany deportation] ... are not considered extreme." Shooshtary v. INS, 39 F.3d 1049, 1051 (9th Cir.1994). Absent more compelling evidence that Parchamento enjoyed a truly family-like relationship with the Enriquez family, it cannot be said that the IJ abused his discretion.
 
 
 7
 Parchamento next argued that severance of her ties to her American community would cause her extreme hardship. In support of this argument, she testified that she attends a local church regularly, has participated in community charities, and has developed significant friendships in the community. Such evidence can support a claim of extreme hardship: church attendance can show that an alien has developed strong ties to the local community by participating in an important community activity, Santana-Figueroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981), charity work can demonstrate some degree of integration into American culture, Salameda v. INS, 70 F.3d 447, 449-50 (7th Cir.1995), and severance of friendship is a hardship the BIA must consider. Zavala-Bonilla, 730 F.2d 562, 568 (9th Cir.1984).
 
 
 8
 Nevertheless, the IJ did not abuse his discretion by rejecting Parchamento's community ties evidence. Rather, he properly considered this evidence and gave a reasoned explanation for rejecting it, finding that Parchamento's charity work had been short lived and her ties to her church limited. Regarding her friendships, the IJ found that they fell within the general rule that the severance of normal friendships does not rise to the level of extreme hardship. Shooshtary, 39 F.3d at 1051.
 
 
 9
 Parchamento also argued that she would be reduced to poverty if she were forced to return to the Philippines. She explained that while she currently makes $1,200 per month as a nanny, similar work in the Philippines would pay $25 per month, and that it would be difficult for her to find a job in the Philippines. Thus, Parchamento testified, if she were to return to the Philippines she would have to live in a "small room" in a "poverty stricken area," would have to eat undesirable food, and would have to wear undesirable clothes.
 
 
 10
 The IJ did not abuse his discretion by rejecting this claim. Rather, he properly acknowledged Parchamento's evidence and gave a reasoned explanation for his conclusion that the economic hardship would not be extreme in this case. As the IJ noted, while depressed economic conditions are relevant to the hardship determination, they do not, in themselves, amount to extreme hardship. Perez v. INS, 96 F.3d 390, 392 (9th Cir.1996). Thus, to show extreme economic hardship an alien must show that economic conditions will have an especially harsh impact because of special circumstances in the alien's case. See, e.g., Santana-Figueroa, 644 F.2d at 1356-57 (complete inability to find job can amount to extreme hardship); Tukhowinich, 64 F.3d at 464 (loss of ability to support dependant family can be extreme hardship). Parchamento, however, did not introduce evidence of such unusually harsh circumstances. Indeed, as the IJ noted, whatever economic hardship Parchamento would encounter in the Philippines would likely be mitigated because Parchamento's job experience would put her at a competitive advantage and because much of Parchamento's own biological family still resides in the Philippines.
 
 
 11
 Parchamento's final argument was that there have been drastic social changes in the Philippines since she left and that adjusting to these changes would cause her extreme hardship. Again, it cannot be said that the IJ abused his discretion by rejecting this claim. Parchamento offered no substantive evidence to show what changes have occurred or how any changes would affect her. In lieu of such evidence, the IJ properly applied the general rule that the "normal processes of readjustment to one's home country after having spent a number of years in the United States are not considered extreme." Shooshtary, 39 F.3d at 1051.
 
 
 12
 Thus, in sum, the IJ did not abuse his discretion in refusing to suspend Parchamento's deportation under the extreme hardship exception. Rather, the IJ properly considered each of Parchamento's asserted hardships, and gave reasoned explanations for his findings that none of these hardships were extreme.
 
 II. Mandate
 
 13
 At oral argument, Parchamento's attorney represented that subsequent to her deportation hearing, Parchamento married an American citizen. Because such a marriage may raise new issues, we withhold the mandate for a period of 45 days following the date it ordinarily would issue under Fed.R.App.P. 41(a), to enable Parchamento to move to reopen[2] before the BIA or seek adjustment of status or both.
 
 
 14
 PETITION DENIED. MANDATE WITHHELD FOR 45 DAYS. The mandate shall issue at the expiration of said 45-day period, following the date it ordinarily would issue under Fed.R.App.P. 41(a), unless otherwise ordered within that period.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by 9th Cir.R. 36-3
 
 
 [1]
 While the court is charged with reviewing the decision of the BIA, it reviews the decision of the IJ instead, if the BIA clearly adopts the decision of the IJ. Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995). Here, the BIA clearly adopted the analysis and decision of the IJ
 
 
 [2]
 Under 8 C.F.R. § 3.2, an alien may have her deportation hearing reopened if she can (1) make a prima facie showing that she is eligible for the relief sought, and (2) explain her failure to present the new claims in her initial appeal. Aviles-Torres v. INS, 790 F.2d 1433, 1435-36 (9th Cir.1986)